UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| SHIRLEY D. BROCK, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:24-cv-200 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| GINGER YATES, *et al.*, | ) | Magistrate Michael J. Dumitru |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Ginger Yates's motion for summary judgment. (Doc. 32.) For the following reasons, the Court will **GRANT** Yates's motion.

**I.  BACKGROUND**

Ginger Yates is a police officer employed by the University of Tennessee at Chattanooga ("UTC"). (Doc. 34, at 1.) Beginning in 2018, Yates became romantically involved with Jim Brock and was living with him until his death on December 18, 2022. (*Id*.) At the time of his death, however, Jim Brock was married to Plaintiff Shirley Brock. (*Id*.; Doc. 41, at 1–2.) Jim Brock and Shirley Brock had previously been divorced three times, and a fourth divorce proceeding was pending at the time of Jim Brock's death. (Doc. 34-1, at 1; Doc. 41, at 2.) Shirley Brock, however, avers that Jim Brock wanted to reconcile and represented to her that he planned to ask Yates to vacate his home. (Doc. 41, at 2.)

Jim Brock obtained sole custody of his grandson, "CEH," when his grandson was an infant. (Doc. 34, at 1–2.) At the time of Jim Brock's death, CEH was thirteen years old, and he lived with Jim Brock and Ginger Yates. (*Id*. at 2.) According to Shirley Brock, following Jim

Brock's death, she and Yates filed competing petitions for custody of CEH.  (Doc. 41, at 3.)  The Hamilton County Juvenile Court awarded temporary custody of CEH to Yates, and, according to Yates, CEH has expressed fear of Shirley Brock and indicated that he does not wish to have any contact with her.  (Doc. 34, at 2, 6, 13.)  Yates further avers that she and CEH have requested on multiple occasions that Shirley Brock not contact them, but that she has sent inappropriate text messages and made inappropriate phone calls, most of which occurred when Yates was off duty.  (*Id*.)  Based on these interactions, Yates avers that she was advised to make police reports and document instances of unwanted contact.  (*Id*.)

In May 2023, Yates filed a petition for an order of protection in the Chancery Court for Hamilton County, Tennessee.[1]  (*Id*. at 3.)  The chancery court set the matter for a hearing on June 20, 2023.  (*Id*.; Doc. 41, at 3.)  According to an affidavit of complaint dated June 16, 2023, Officer Trent Kilpatrick responded to Yates's report of receiving harassing phone calls from Shirley Brock and obtained a warrant for Brock's arrest.[2]  (Doc. 42-4, at 4–5.)  Prior to the June 20, 2023 hearing in chancery court, however, Yates decided to dismiss her petition, and, at the hearing, the chancery court entered an order dismissing the petition.  (Doc. 42-3, at 2–3.)  Yates avers that she dismissed the action in chancery court so that she could pursue a restraining order in Hamilton County Juvenile Court.  (Doc. 34, at 3.)

On June 24, 2023, the Chattanooga Police Department arrested Shirley Brock for harassment.[3]  (Doc. 34, at 8.)  Yates avers that she was not involved in the arrest or prosecution

---

[1] Shirley Brock avers that Yates also sought an order of protection against her in 2021, but that her petition was dismissed because Yates failed to satisfy her burden of proof at a hearing on the petition.  (Doc. 41, at 2: Doc. 42, at 2–3.)

[2] Shirley Brock notes, however, that at the time Yates made her police reports, there were no orders prohibiting her from contacting CEH.  (Doc. 41, at 4.)

[3] Based on Shirley Brock's actions at the time of her arrest, she was also charged with resisting arrest.  Brock avers, however, that multiple witnesses observed that she was not resisting arrest,

of Shirley Brock, and she had no relationship with the arresting officer. (*Id.* at 3.) According to Shirley Brock, however, she asked the arresting officer who complained about harassment and was informed that a UTC police officer had made harassment allegations. (Doc. 41, at 5.)

After her arrest, Shirley Brock appeared in Hamilton County General Sessions Court on multiple occasions, and, on several of those occasions, Yates appeared as a victim, each time wearing her UTC police uniform.[4] (Doc. 41, at 6.) The charges against Shirley Brock were eventually dismissed and expunged from her criminal record. (Doc. 41, at 8; Doc. 42-5.)

Yates avers that (1) the police reports she filed against Brock had nothing to do with her employment as a police officer and that they were filed as a personal matter relating to a child in her custody, and (2) Brock complained about Yates's conduct to the university, and, after an internal investigation, the university found no wrongdoing. (Doc. 34, at 2–4, 15.)

Shirley Brock initiated this action on June 19, 2024 (Doc. 1), and, in her complaint, she asserts a claim under 42 U.S.C. § 1983 alleging that Yates violated her Fourth Amendment right to be free from "unlawful" or "illegal" prosecution. (Doc. 1, at 9–10.) On May 22, 2025, Yates filed a motion for summary judgment (Doc. 32), and that motion is now ripe for the Court's review.

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

but, rather, trying to get a copy of the chancery court dismissal order to show law enforcement. (Doc. 41, at 5.)

[4] According to Shirley Brock, Yates eventually stopped wearing her police uniform to general sessions court after Brock's attorney filed an internal affairs complaint with the UTC legal counsel alleging that Yates was wearing her police uniform to gain favor with the court and to harass her. (Doc. 41, at 7.)

56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

Yates has moved for summary judgment on Brock's § 1983 claim for "unlawful prosecution,"[5] arguing that the undisputed facts demonstrate that her actions were not taken under the color of law. (Doc. 32.)

42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must prove: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

"[N]ot every action undertaken by a person who happens to be a state actor" qualifies as being taken "under color of law." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th

---

[5] "The Sixth Circuit recognizes a separate constitutional claim of malicious prosecution under the Fourth Amendment, which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Dixon v. Ginley*, No. 1:13-cv-489, 2013 WL 2425132, at *7 (N.D. Ohio June 3, 2013) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). To prevail on a claim for malicious prosecution under § 1983 for violation of Fourth Amendment rights, a plaintiff must establish that:

> (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute";
>
> (2) "there was a lack of probable cause for the criminal prosecution";
>
> (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure"; and
>
> (4) "the criminal proceeding [was] resolved in the plaintiff's favor."

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)) (internal quotation marks and alterations omitted).

Cir. 2001). "Section 1983 is not generally implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Id*. (citation omitted). As a result, "[a]lthough under color of law means under pretense of law, the acts of state officials in the ambit of their personal pursuits do not constitute state action." *Id*. Consistent with these principles, "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (quoting *Stengel v. Belcher*, 522 F.2d 438, 440–41 (6th Cir. 1975)).

"Courts must consider the totality of the circumstances in determining whether an officer was acting under color of law at the time of the alleged constitutional violation." *Morris v. City of Detroit, Mich*., 789 F. App'x 516, 518 (6th Cir. 2019). Courts consider "certain factors when deciding whether an officer was acting under color of state law, such as whether the officer flashed a badge, identified himself as a police officer, placed an individual under arrest, intervened in a dispute between third parties pursuant to a duty imposed by police-department regulations, or used state-issued equipment." *Id*. Stated another way, "'[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under the color of law.'" *Id*. (quoting *Stengel*, 522 F.2d at 441).

Applying these principles, the United States Court of Appeals has affirmed grants of summary judgment on § 1983 claims when the totality of the circumstances indicates that a defendant police officer's actions were taken as a private citizen in connection with a personal pursuit. For example, in *Redding v. St. Eward*, another case involving a love triangle, the plaintiff asserted § 1983 claims for false arrest against a police officer after the officer twice

6

called 911, identified herself as a police officer, and reported that the plaintiff was loudly knocking on her door. 241 F.3d at 531–32. After officers who responded to the 911 calls arrested the plaintiff, she brought a § 1983 claim for false arrest against the officer who made the 911 calls, arguing that, but for the defendant officer's false report in the 911 calls and her relationship with the police department in general, she would not have been arrested. *Id*. at 533. The Sixth Circuit affirmed the district court's grant of summary judgment in favor of the police officer holding that she was not acting under the color of law when she called 911. *Id*. at 533. The Sixth Circuit explained that the officer "did not herself physically arrest, restrain or attempt to restrain [the plaintiff], nor did she direct the officers responding to the call to arrest [plaintiff] or in any way instruct them as to how they should perform their duties." *Id*. Rather, the Sixth Circuit concluded that the defendant officer's actions in making the 911 calls and reports to the responding officers were "functionally equivalent to that of a private citizen calling for police assistance," and, as a result, the defendant officer was not acting under the color of law. *Id*.; *see also Morris*, 789 F. App'x at 518–19 (holding that on-duty police officer was not acting under the "color of law" when attempting to collect personal debt or during resulting physical altercation).

In this case, even viewing the facts in the light most favorable to her, Shirley Brock has not proffered sufficient evidence from which a reasonable jury could conclude that Yates's actions were taken "under color of law." The undisputed facts are that (1) Yates made police reports regarding Shirley Brock's behavior towards her and CEH; (2) based on at least one of those reports, a law enforcement officer obtained a warrant for Brock's arrest; and (3) Yates was employed as a police officer for the UTC at the time she made a report that led to Brock's arrest. (Doc. 34, at 1–3; Doc. 41, at 4–8.) Even if Yates identified herself as a UTC police officer at the

time she made her police reports regarding Brock's actions, that fact alone is insufficient for a reasonable jury to find that Yates made her police reports under the color of law. *See Redding*, 241 F.3d at 532–33. Rather, like the defendant police officer in *Redding*, the undisputed evidence indicates that Yates's actions were the functional equivalent of a private citizen seeking police assistance regarding a matter that was personal in nature. Similarly, the fact that Yates appeared in her police uniform at Brock's hearings in general sessions court after her arrest is insufficient for a reasonable jury to conclude that Yates pursued an unlawful prosecution under the color of law, especially because Brock has not presented any evidence regarding actions Yates took during those hearings. As the Sixth Circuit has instructed, "[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under the color of law," *Morris*, 789 F. App'x at 518, and there is insufficient evidence for a reasonable jury to conclude that the actions Yates took at the hearing, even if she was wearing her uniform, were undertaken as part of her duties as a UTC police officer. As a result, Brock has not proffered evidence from which a reasonable jury could conclude that Yates's actions were taken under the color of law, and, as a result, her § 1983 claim against Yates fails as a matter of law. Accordingly, the Court will **GRANT** Yates's motion for summary judgment (Doc. 32).

IV. CONCLUSION

For the reasons stated herein, Yates's motion for summary judgment (Doc. 32) is **GRANTED** and Shirley Brock's § 1983 claim against her is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**